## BASHAM V. TOORS.

1. MECHANIC'S LIEN: *Construction of Act of 1885: Right of sub-contractor.*

Under the Act of 1885, entitled "An act for the better protection of mechanics, artisans, material men and other sub-contractors," where the landowner fails to reserve a fund for the benefit of sub-contractors, by withholding from the contractor one-third of the cost of the improvement, or of the amount agreed to be paid therefor as required by the act, the property improved will be bound to a sub-contractor only for the market value of materials furnished the contractor and not for the price the latter has agreed to pay.

2. SAME: *Same: When claim to be presented.*

Under the provision of the Act of 1885 which requires that a sub-contractor in order to assert a mechanic's lien, must present his claim to the landowner within ten days after the "job or contract" let by the owner "shall have been fully completed," the time allowed for presenting such claim must be computed from the completion of the work to be done under the contract of the owner with the principal contractor, although the contemplated improvement may not then be completed. And where the principal contractor abandons his contract after having done work under it, his sub-contractors must present their claims within ten days after such abandonment and cannot postpone the presentation until the work is completed under a new contract with a stranger to the first one, or is completed by the owner himself.

APPEAL from *Pulaski* Circuit Court.

J. W. MARTIN, Judge.

*T. B. Martin, Robert J. Lea* and *C. T. Coffman,* for appellant.

1. The act of March 17, 1885, will be strictly construed, and all persons claiming rights thereunder will be held to a strict compliance with the terms of the same.

While we admit that as between the owner, who contracts, and the mechanic with whom he contracts, statutes of this character will be liberally construed, and a substantial compliance with the terms thereof be held sufficient, yet all the courts hold that a statute which authorizes property to be

encumbered without resort to legal process, and by one with whom the owner has no privity of contract, must not only be strictly construed, but that there must be a strict compliance with the terms of the same. See Phillips on Mechanics' Liens, secs. 18 and 19, and cases cited. 50 N. Y., 360; 30 Ark., 568.

In this case the account was not certified as correct by the contractor as required by statute, and there was no evidence to explain the meaning of the cabalistic letters, "O. K."

2. This claim, if enforceable at all, could only be enforced for the *actual value* of the material furnished. 66 Penn. St., 336; 74 Mo., 37; Phillips Mech. Liens, secs. 79, 202, 212; 1 Phil., 285; 65 Mo., 598.

3. The account should have been presented within ten days from the time the contract was abandoned by Moyer, the contractor. It was then the work or job was completed as far as the contractor was concerned.

*Ratcliffe & Fletcher*, for appellee.

1. The time the *building is completed* is the proper time from which to reckon the ten days for presentation, not the time the contract was abandoned. Acts 1885, p. 74, sec. 1; Houck on Liens, sec. 184.

The statute (Acts of 1885, p. 74, sec. 1,) makes it the imperative duty of the property owner to retain one-third of the contract price and "to promptly pay the *bills and accounts* of all such persons which may be presented to him in ten days," etc. The duty becomes personal and necessarily involves a *personal liability;* his liability is fixed to the extent of one-third the contract price which is to be discharged by paying the *bills and accounts* in the order of their presentation. No discretion or option is given him in the matter. Section 4 provides that the lien shall have the same effect, force and

extent and be filed, sued for and enforced as in case of persons doing work or furnishing things under contracts therefor *directly with the owner*, etc. This statute brings our case clearly within the principle enunciated in the case of *Young v. Lyman*, 9 Barr, Penn., 449,

The cases referred to by appellant are based on statutes different from ours and are clearly distinguishable from this case.

The bills which appellant claims were presented before Toors' bill was presented were all made by Basham and charged directly to him, and as between him and Moyer stood in the attitude of bills "paid during the progress of the work;" these bills are positively excluded from payment out of the "reserve fund" by sec. 3, of the act; if it were otherwise the statute could be easily evaded and rendered of no avail to parties doing work or furnishing material.

COCKRILL, C. J.

This is a suit by Toors against Basham to enforce a mechanic's lien. Basham, who was the owner of certain town lots, let a contract to one Moyer to improve a house situated thereon for a stipulated compensation. Moyer got Toors to furnish materials for the purpose. Moyer had not proceeded far with the work when he discovered that he would lose money by complying with the contract and abandoned it. He and Basham then agreed to divide the loss equally between them and Basham took up the work where Moyer left it and completed the improvement. Toors presented to Basham an account for the materials furnished to Moyer and used by him in repairing the house. Three several presentations of the account were made—one, before Basham and Moyer adjusted their dispute, another within ten days after

the adjustment, and the third within ten days after the work was completed by Basham. The exact time of the first presentation is not shown and the testimony is conflicting as to whether the account was certified by Moyer when first presented, as it should have been.

The court instructed the jury that the presentation was in time if made within ten days after Basham had completed the work; refused to permit Basham to show that the market value of the materials was less than the amount certified ·to by Moyer; and after a verdict for the plaintiff, condemned the property to be sold to satisfy the lien. Basham appeals.

The appeal involves the construction of the Act of March 17th, 1885, under which the lien is asserted. The act is unnecessarily prolix and some of its provisions fall under the imputation contained in the observation of Blackburn, J., in *Regina v. Scott*, 4 Best & Smith, 374, in respect to an act passed in 1746, to the effect that ''the statute though not drawn in modern times is somewhat obscure.'' It is supplemental to the mechanic's lien law as found in chapter 96 subdivision 11 of Mansfield's Digest, and when read in connection with the provisions found there, its true intent and meaning are more apparent. It was intended, as its terms and title show, for the better protection of sub-contractors—a term which includes according to the statutory definition, all persons who are entitled to the lien except those who have contracted with the owner or proprietor of the land to be charged. Mansf. Dig., sec. 4422.

The last section of the act states that it was not intended to repeal any part of the prior law. An absolute right to a lien was already provided for the sub-contractor by virtue of sections 4403–4 of Mansfield's Digest, in every case where he had given notice to the owner or proprietor of his inten-

tion to look to the premises for security before performing labor or furnishing materials for the contractor, and the amount of his security was regulated by the value of the services rendered or of the materials furnished without regard to the contract between the owner and the first contractor, or the amount due thereunder. If notice was not given to the owner in advance of furnishing materials or performing labor, the sub-contractor's security was limited to the amount due from the owner to the first contractor; if nothing was due no lien could be acquired in the absence of a previous notification. Mansf. Dig., sec, 4421. Where, therefore, the statutory notice had not been given, the owner could defeat the sub-contractor's right to a lien by paying the contractor what his contract called for. It was to supply, in a measure, that supposed defect in the law that the Act of March 17th, 1885, was enacted. To accomplish that end the act makes it the owner's duty to withhold from his contractor one-third of the cost of the improvement or of the amount agreed to be paid therefor, for a period of ten days after the work under the contract is completed; and to the extent of the sum thus required to be reserved, sub-contractors may establish liens upon the property that is improved by them, upon complying with the terms of the act, although the notice required by section 4403, *supra*, has not been given, and notwithstanding the owner has paid the contractor in full. To perfect the lien the act requires the sub-contractor to present his claim to the owner with the contractor's certificate that it is correct within the ten days named. If the contractor refuses to certify the account, the act points out the course to be pursued, but that is not material to the determination of this cause. The owner is required to pay the sub-contractors who present their certified claims within the pre-

Basham v. Toors.

1. MECHANIC'S LIEN: Construction of act of 1885: Right of sub-contractor.

scribed period out of this reserved fund. The first question that arises here is, shall he pay the material man the amount agreed upon between the latter and the contractor, or only the fair market value of the materials? So long as the reserved fund is actually held by the land-owner for the benefit of the sub-contractors, the law is plain. It is then a debt due from him to the contractor and the act provides the means of appropriating it to the payment of what the contractor owes to the laborers and material-men who have contributed to the performance of the contract under which the fund was earned; and in doing so a beneficent end is worked out without injustice to any one. But where the land-owner has failed, as Basham did, to reserve the fund and owes the contractor nothing, is his property bound to the sub-contractor only for the value of the materials, or for the price agreed to by the contractor? The former act in favor of material-men limits their right of recovery against the property to the value of the materials used whether the owner was indebted to the contractor or not; and the question is, does the act of 1885 change the rule? As we have seen, the act declares it was not the intention to repeal any provision of the former law. Was it then the intention to fix different rules for the measure of recovery, to be determined only by the act under which the sub-contractor asserts his claim? Or, to put the question differently, was it intended to allow a recovery of only the value of the materials if proceedings were had under section 4403 of Mansfield's Digest, but to allow the price agreed to by the contractor, if the claim was under the act of 1885? The double rule would be productive of uncertainty and confusion in many cases; and where both laws had been complied with and the claim of the sub-contractor was greater than the fund required to be reserved, we should

Basham v. Toors.

have to apply each of the standards to the several parts of the same claim in one suit.   We should be slow to conclude that such was the legislative intent.   If the design to punish the owner for a failure to reserve the required fund by holding him and his property liable for the contractor's agreed price, clearly appeared, effect would be given to it as was done in the case of *Bullock v. Horn*, 44 Ohio St., 420.   But the rule for the construction of statutes which create charges against individuals or against their property without their assent is this:   The burden shall not be extended beyond the plain meaning of the terms creating it (*Flournoy v. Shelton*, 43 Ark., 168; *Peay v. Field*, 30 Ib., 600; *Dana v. Ry.*, 27 Ib., 564); but when the legislative intent to create the charge is clearly ascertained, the remedy shall not be frittered away by a too close adherence to those requirements of the statute which are designed to regulate the procedure for enforcing the charge.   *Buckley v. Taylor*, *ante;* *Anderson v. Seamans*, 49 Ark., 475.

Now the only provision of the statute prescribing the rights of the sub-contractors in case the land-owner fails to reserve the fund for his benefit, is found in section 4 of the act.   It gives him a lien for "work or labor done, or materials, machinery or fixtures furnished."   Where the statute gives a lien for "materials," without saying more, and they are not furnished under a contract with the owner, the extent of the lien is commonly held to be the market value of the materials when furnished.   2 Jones on Liens, sec. 1306; *Deardroff v. Everhartt*, 74 Mo., 37; *Laird v. Moonan*, 32 Minn., 358; *Lee v. Burke*, 66 Penn. St., 336; *Cattanach v. Ingersoll*, 1 Phil. R., 285.

The other provisions of the section relate only to the effect of the lien and the mode of enforcing it, and have no bear-

ing on the extent or amount of it.   It is not plain, therefore, that it was intended to preclude the owner by the agreement as to value between the contractor and material-man, and we should not make a judicial extension of the terms of the act. The court erred in holding that the value of the materials was not open to enquiry.

2. SAME: When claim to be presented.   The only remaining question presented by counsel, which we deem essential to determine, is as to the correctness of the court's charge to the effect that a presentation of the certified account within ten days after Basham had completed the work, was in time.   The time of presentation is material.

The language of the statute is that it must be within ten days "after such job or contract (that is the job or contract previously mentioned as having been let by the owner to a contractor,) as originally made or amended shall have been fully completed."   Section 1, Act of March 17th, 1885. Now as there is no contract and no privity of contract between the owner and the sub-contractor, the completion of the work under the contract mentioned in the statute must mean the contract of the owner with the person through whom the sub-contractor's lien must be worked out, *i. e.*, the contractor; and the completion of that contract is the period from which the sub-contractor must begin to compute the time allowed for the presentation of his account.   The completion of the work under the contract need not be the completion of the contemplated improvement.   It may be that only a part of the work has been let, or the completion of the structure may not be in present contemplation.   And so, when the contractor abandons his contract, the work under it must be regarded as completed within the meaning of the statute, else the sub-contractor could not enforce his lien at all when the owner has seen fit to pay off the contractor.

As was said in *Cattin v. Douglass*, 33 Fed. Rep., 569, "It would be inequitable and unreasonable and contrary to the spirit of the law, to hold that parties are absolutely barred of all rights to the lien where the work is prematurely stopped or abandoned without fault of such parties. Such a construction would place the material-men and laborers at the mercy, dishonesty, fickleness or misfortune of the owner or contractor." But if the work is completed for the purpose of enabling the sub-contractor to enforce his lien, it is completed so as to allow the owner to settle with the contractor after ten days have elapsed, and so bar the right to a lien. A change in the contract, or an "amendment" of it, as the statute has it, or a suspension of the work for a short period, will not affect the lien; but when the contractor abandons his contract after having done work under it, and the owner makes a new and independent contract with a stranger to the first one, or completes the work himself, the material-men and laborers under the first contractor cannot postpone the presentation of their claims to the completion of the improvement under the new contract, but must act within the prescribed period after the abandonment of the contract under which they have acquired their rights. 2 Jones on Liens, secs. 1438, 1440; see *Bertrand v. Byrd*, 5 Ark., 651. The court erred in instructing the jury otherwise.

For the errors indicated, the judgment is reversed and the cause will be remanded for a new trial.